**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM H. YELLAND,** | : |
| | : |
| **Plaintiff** | **CIVIL ACTION NO. 3:16-2080** |
| | : |
| **v.** | **(JUDGE MANNION)** |
| | : |
| **ABINGTON HEIGHTS SCHOOL** | |
| **DISTRICT***, et al.,* | : |
| | |
| **Defendants** | : |

**M E M O R A N D U M**

## I.    BACKGROUND[1]

Plaintiff William H. Yelland was a science teacher at the Abington Heights Middle School ("AHMS") in the Abington Heights School District ("AHSD") from 2013 until May 7, 2015. On April 8, 2015, allegations of assault were made by the parents of one of plaintiff's eighth grade students, ("Student A"), to AHMS Principal Michael Elia and AHMS Vice Principal Eduardo Antonetti. After the meeting, the principal and vice principal at AHMS assured the parents of Student A that plaintiff would not return to the classroom and they contacted the Department of Human Services Office of Children, Youth and Families ("CYF") as well as the South Abington Police Department to

---

[1]All facts are taken from plaintiff's complaint, (Doc. 1), unless otherwise noted. The facts alleged in plaintiff's complaint must be accepted as true in considering the defendants' motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

commence criminal proceedings against plaintiff. The next day, AHSD officials, including defendants AHSD Superintendent Michael Mahon, Elia and Antonetti, initiated an investigation into the assault allegations and discussed the allegations with plaintiff during a meeting. The teacher's union counsel was also present. Plaintiff was asked to describe the April 8th incident with Student A and he was asked questions about some other alleged incidents. After the meeting, plaintiff was suspended indefinitely without pay. AHSD officials then interviewed several students and eventually forwarded the results of their investigation to the Lackawanna County District Attorney's ("DA") Office. Plaintiff alleges that defendants intentionally withheld exculpatory information when they provided information to the county prosecutor and that they failed to disclose the accounts of several eyewitnesses.

On June 11, 2015, the DA filed criminal charges of simple assault and endangering the welfare of children against plaintiff based solely on the allegations of assault made by Student A arising out of the April 8, 2015 incident. A jury trial was subsequently commenced in November 2015 against plaintiff regarding the criminal charges. Plaintiff was found not guilty by a jury on all of the charges. *See* Lackawanna County Court criminal docket in *Com. of PA v. Yelland*, Docket No. CP-35-CR-1178-2015.[2]

---

[2]The court notes that the Lackawanna County Criminal Docket for Yelland's criminal cases can be found at http://ujsportal.pacourts.us. The

On October 14, 2016, plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983 against defendants AHSD, AHSD Board of Directors, Mahon, Elia and Antonetti. (Doc. 1). Plaintiff sues Mahon, Elia and Antonetti in both their official and individual capacities. Plaintiff alleges that his Fourteenth Amendment procedural due process rights were violated with respect to his suspension and termination.

Specifically, in Count I, plaintiff alleges that he was not afforded pre-deprivation due process by all defendants and that the April 9, 2015, meeting did not satisfy the requirements of Cleveland Bd. of Education v. Loudermill, 470 U.S. 532 (1985). Plaintiff alleges that after his indefinite suspension without pay, defendants conducted a "sham investigation" culminating in his May 7, 2015, termination based on his alleged April 8th "physical[] attack" on Student A as well as alleged physical attacks against other students.

In Count II, plaintiff alleges that all defendants denied him post-termination process by refusing to participate in his request for arbitration regarding his grievance claim that he was wrongfully terminated without just

_____

court can take judicial notice of Yelland's Lackawanna County Court Criminal Docket for purposes of defendants' instant motion as an official state court record and matters of public record. *See* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)(In considering a Rule 12 motion, the court may consider documents "that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.")(citations omitted).

cause which he made pursuant to the Abington Heights Education Association's Collective Bargaining Agreement ("CBA"). As Exhibit A attached to his complaint, (Doc. 1-1), plaintiff submitted a copy of the decision and order issued by the Pennsylvania Labor Relation Board ("PLRB") regarding an unfair practices charge filed by the Abington Heights Education Association ("Union") on September 25, 2015 alleging that AHSD violated the Public Employee Relations Act ("PERA") by refusing to arbitrate Yelland's grievance. Further, plaintiff alleges that AHSD was deliberately indifferent to his rights by failing to properly supervise and train defendants Mahon, Elia and Antonetti.

In Count III, plaintiff asserts a state law claim of malicious prosecution against the defendants Mahon, Elia and Antonetti.

As relief in his complaint, plaintiff seeks an injunction from the court to order the defendants to reinstate his employment, compensatory damages, including front pay and back pay, punitive damages, nominal damages as well as attorneys' fees pursuant to 42 U.S.C. §1988 and costs.

Pending is the motion to dismiss plaintiff's complaint, (Doc. 1), for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) filed jointly by all defendants, (Doc. 6), on November 3, 2016. Defendants filed their brief in support on November 17, 2016. (Doc. 9). Plaintiff filed his brief in opposition to defendants' motion on December 7, 2016. (Doc. 14). On December 21, 2016, defendants filed a reply brief. (Doc. 16). Defendants' Rule 12(b)(6)

motion is ripe for disposition.

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of his due process rights under the Fourteenth Amendment of the U.S. Constitution. The court can exercise supplemental jurisdiction over plaintiff's state law malicious prosecution claim under 28 U.S.C. §1367. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## II.    STANDARDS OF REVIEW

### A.    *Motion to Dismiss*

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly,

5

550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (*quoting* Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

6

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### B. Section 1983

The school district, the school board and the school officials are state actors for purpose of §1983. *See* Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d 258, 262 (E.D.Pa. 2006).

To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing *Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing

Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

## III.   DISCUSSION

### A.   *Punitive Damages Claim*

It is well settled that the Supreme Court has held punitive damages may not be awarded against municipalities under §1983. *See* City of Newport v. Fact Concerts, Inc., 453 US 247, 271 (1981). In fact, as defendants note, (Doc. 16 at 2, n. 1), plaintiff concedes that punitive damages are not permissible against AHSD and against Mahon, Elia and Antonetti in their official capacities. (Doc. 14 at 23-24). Thus, any claim for punitive damages against defendants AHSD and its Board of Directors as well as against Mahon, Elia and Antonetti in their official capacities is subject to dismissal. However, plaintiff has also sued defendants Mahon, Elia and Antonetti in their individual capacities and his claim for punitive damages against these defendants in this capacity can proceed.

Based on the discussion below, the court finds, at this stage, that plaintiff has sufficiently alleged "reckless indifference" with respect to the knowledge of Mahon, Elia and Antonetti of the illegality of their actions to seek punitive damages with respect to his pre-termination due process claim in Count I under §1983. *See* Alexander v. Riga, 208 F.3d at 430-31. As further discussed below, plaintiff's stated constitutional claim will be allowed to proceed as against AHSD, Mahon, Elia and Antonetti. Thus, the plaintiff's

claim for punitive damages against defendants Mahon, Elia and Antonetti in their individual capacities shall **PROCEED**. Plaintiff's claim for punitive damages against AHSD and its Board of Directors as well as against Mahon, Elia and Antonetti in their official capacities is **DISMISSED WITH PREJUDICE**.

### B. *Claims against Board of Directors and*, *Mahon, Elia and Antonetti in their official capacities*

To the extent plaintiff names the AHSD Board of Directors as a defendant in addition to AHSD and sues Mahon, Elia and Antonetti in their official capacities, these defendants are part of the District itself. *See* Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) (Section 1983 suits against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted). As defendants note, (Doc. 16 at 2, n. 1), plaintiff seemingly concedes that his claims against AHSD Board of Directors and his claims against Mahon, Elia and Antonetti in their official capacities merge with his claims against the District. (Doc. 14 at 24). Thus, plaintiff's claims against AHSD Board of Directors and against Mahon, Elia and Antonetti in their official capacities are redundant of the claims plaintiff asserts against AHSD. *See* Swedron v. Borough, 2008 WL 5051399, *4 (W.D. Pa. Nov. 21, 2008) (Court held that official capacity claims under §1983 against defendant police officers should be dismissed since they were redundant of the claims against

10

defendant Borough) (citing Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988)); Brice v. City of York, 528 F.Supp.2d 504, 516 n. 19 (M.D. Pa. 2007) ("claims against state officials in their official capacities merge as a matter of law with the municipality that employs them."); Burton v. City of Phila., 121 F.Supp.2d 810 (E.D. Pa. 2000);Donovan v. Pittston Area School Dist., 2015 WL 3771420, *5 (M.D.Pa. June 17, 2015) (Court dismissed with prejudice plaintiff's claims against board members of school district in their official capacity as redundant of claims against school district); Hill v. Bor. of Kutztown, 455 F.3d 225, 233 n. 9 (3d Cir. 2006).

As such, plaintiff's claims against AHSD Board of Directors and against Mahon, Elia and Antonetti in their official capacities are **DISMISSED WITH PREJUDICE**. Defendant AHSD Board of Directors is **DISMISSED WITH PREJUDICE**. Defendants Mahon, Elia and Antonetti however can be sued under §1983 in their individual capacities in addition to defendant AHSD. Donovan v. Pittston Area School Dist., 2015 WL 3771420, *16; Kohn v. School Dist. of City of Harrisburg, 817 F.Supp.2d 487, 510 (M.D.Pa. 2011); Damiano v. Scranton School District, 135 F.Supp.3d 255, 268-69 (M.D.Pa. 2015).

### C. Suspension without Pay--Pre-Deprivation Due Process Claim

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "[A] procedural due process analysis involves a two step inquiry: (1) does

11

the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements." Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 F.App'x 302 (3d Cir. 2007); *see also* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (citing Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)). Whether a legitimate entitlement exists is a question of state law. Hill, 455 F.3d at 234. Thus, while state law determines if an employee has a property right in continued employment, the process that is due is a question of federal law. McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995).

Under Pennsylvania law, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists some express legislative authority for doing so." Elmore, 399 F.3d at 282 (*citing* Stumpp v. Stroudsburg Mun. Auth., 659 A.2d 333, 334 (Pa. 1995)). The Pennsylvania legislature has granted professional employees a tenure status, and thus a protected property interest in their jobs, specifying requirements for termination of a contract. 24 Pa.C.S. §11–1122. Certified teachers are professional employees. 24 Pa. C.S. §11–1101(1). Pennsylvania requires that public school teachers hold a certificate. 24 Pa.C.S. §12-1201. A contract for employment also confers a property right when "the contract itself includes a

provision that the state entity can terminate the contract only for cause." Dee v. Borough of Dunmore, 549 F.3d 225, 230-31 (3d Cir. 2008) (citing Unger v. Nat'l Residents Matching Prog., 928 F.2d 1392 (3d Cir. 1991)).

"Denial of continued public employment can also constitute deprivation of a liberty interest." Baraka v. McGreevey, 481 F.3d 187, 209 (3d Cir. 2007) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972))." In the public employment context, this liberty interest arises "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Roth, 408 U.S. at 573 (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)).

Plaintiff does not specifically allege if he holds a professional educator's certificate issued by the Pennsylvania Department of Education. However, he alleges that he graduated from college and in 2013 he accepted a science teacher position with AHMS which he held until May 2015. Also, in the PLRB decision, (Doc. 1-1), it was indicated that plaintiff fell under the provisions of the Pennsylvania School Code. Thus, it appears that at all relevant times he was a professional educator employed by AHSD under the Pennsylvania School Code. As such, plaintiff alleges that as a member of the Union he had a protected property interest in his employment with AHSD.[3]

---

[3]The court notes that a teacher without a certification is not a professional employee under Pennsylvania law, and does not have a statutory property interest in his employment. Coreia v. Schuylkill Cty. Area Vo-Tech School Auth., 241 F.App'x 47, 50 (citing Occhipinti v. Bd. of Sch. Dirs. of Old

Defendants argue that plaintiff's pre-deprivation due process claim regarding his April 9, 2015 indefinite suspension without pay must be dismissed since the meeting held that day provided him with all of the process to which he was entitled, namely, he was aware that District officials were questioning him about his contact with Student A and, he was given a chance to respond to the charges and the evidence.

In Count I, plaintiff alleges that prior the April 9, 2015 meeting defendants failed to give him notice of the charges against him and, that at the meeting they merely asked him vague questions about only two of seven alleged incidents which were later contained in his Notice of Dismissal. He also alleges that "[a]t no time prior to his suspension without pay did the defendants provide [him] with an explanation of any of [their] evidence against him", and "with a meaningful opportunity to present his side of the story." As such, plaintiff claims that defendants deprived him of a legitimate property interest without due process in violation of the Fourteenth Amendment which caused him to suffer considerable harm.

Plaintiff contends that he has asserted a cognizable pre-deprivation procedural due process claim since his April 9, 2015 meeting was not a

Forge Sch. Dist., 464 A.2d 631, 632 (Pa.Cmwlth. 1983)(holding that teacher ceases to be a "professional employee" when certification lapses)). Thus, if plaintiff was not certified at the time he was terminated, he was not a professional employee under Pennsylvania law, and may not have had a statutory property interest in his employment at the time he was fired. *See* Occhipinti, 464 A.2d at 632.

hearing and did not satisfy the due process requirements, i.e., he was not given notice of all of the grounds and his suspension without pay resulted in his permanent discharge. No doubt that this court as well as other courts have held that suspensions of public employees without pay require pre-deprivation process. *See* Moffitt v. Tunkhannock Area School Dist., 2013 WL 6909958 (M.D.Pa. Dec. 31, 2013) (plaintiff was suspended indefinitely without pay); *see also* Coover v. Saucon Valley Sch. Dist., 955 F.Supp. 392, 404 (E.D.Pa. 1997) ("A public employee has a property interest in not being suspended without pay with intent to dismiss.") (citation omitted); Markovich v. Panther Valley School District, 2014 WL 3735292 (M.D.Pa. July 28, 2014) (this court denied defendants' motion to dismiss pre-deprivation due process claim since plaintiff ROTC instructor alleged he did not receive an adequate explanation of the charges against him and that he did not have an opportunity to defend himself).

As stated in Moffitt v. Tunkhannock Area School District, 160 F.Supp.3d 786, 793 (M.D.Pa. 2016):

> Prior to termination, *Loudermill* requires "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987) (quoting Loudermill, 470 U.S. at 546, 105 S.Ct. 1487). The pretermination hearing, "though necessary, need not be elaborate," and it must at least entail: 1) "oral or written notice of the charges," 2) "an explanation of the employer's evidence," and 3) "an opportunity for the employee to tell his side of the story." Loudermill, 470 U.S. at 545, 105 S.Ct. 1487.
>
> Thus, since plaintiff Yelland was a public employee with a legitimate

interest in continued employment, he was entitled to "oral or written notice of the charges against [him], an explanation of the employer's evidence, and an opportunity to present [his] side of the story" before his employment was terminated. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

"'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Biliski v. Red Clay Consol. Sch. Dist. Bd. Of Educ., 574 F.3d 214, 220 (3d Cir. 2009) (quoting Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)). "[W]here it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. at 930. Thus, a public employee is not absolutely entitled to a pre-suspension hearing. Id.; *see also* Gilbert v. Homar, 520 U.S. at 930 (Supreme Court "rejected the proposition that due process *always* requires the State to provide a hearing prior to the initial deprivation of property.").

To determine what process is due, the court must examine three factors: 1) plaintiff's interest in not being suspended without pay from April 9, 2015 through May 7, 2015; 2) AHSD's interest in expeditiously disciplining unsatisfactory employees and "the avoidance of administrative burdens;" and 3) the risk of erroneous deprivation. Biliski, 574 F.3d at 221; see also Hertzler v. West Shore School Dist., 2013 WL 53982, *3. Plaintiff had an interest in his job and his pay, Hertzler, 2013 WL 53982, *3, and he did not receive his

16

salary during his entire suspension. Thus, plaintiff's interest is great. AHSD also had a significant interest in promptly disciplining employees that are alleged to have committed wrongdoing and in protecting the integrity of the district. *See* Jerrytone v. Musto, 167 Fed.Appx. at 301 (state had strong interest in "maintaining public confidence in the school system"). The risk of erroneous deprivation was also great since plaintiff alleges that he did not receive notice of all of the charges against him, that he was not afforded an opportunity to respond to all of the charges and that the information supporting the charges was not reliable.

In light of the above, the court finds that plaintiff Yelland has made a plausible claim that he was deprived due process of law prior to his indefinite suspension without pay, i.e., plaintiff had a property interest in continued employment with AHSD and the three-step balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), weighs in favor of requiring a pre-deprivation hearing. Thus defendants' motion fails under the *Gilbert* exception. The parties will be permitted to conduct discovery regarding plaintiff's claim in Count I including an examination of the complete facts as to what transpired during the April 9, 2015 meeting. The court will not conduct an analysis at this early stage of the case as to the facts regarding the meeting and whether plaintiff was afforded his due process rights. After discovery, the parties will be permitted to file a summary judgment motion with respect to this claim if they so choose.

17

Thus, at this juncture of the case, plaintiff has sufficiently alleged that the pre-deprivation procedures utilized by the defendants were not adequate to meet due process requirements particularly since he was suspended indefinitely without pay and he alleges that he suffered a serious adverse employment action one month later. *See* Markovich, 2014 WL 3735292, \*6; Mariano v. Borough of Dickson City, Civil No. 13-97, M.D.Pa. (Dec. 2, 2013); Moffit, 160 F.Supp.3d at 793-94 ("Although advance notice is not required, Gniotek, 808 F.2d at 244, 'for the informal discussion contemplated by *Loudermill* to be meaningful, the employee must be apprised of the nature of the charges against him or her before or at the time the hearing begins, Morton, 822 F.2d at 371 (3d Cir.1987)."). Also, in Moffitt, 160 F.Supp.3d at 794, "[t]o the extent that the plaintiff answered questions during the meeting, this did not clearly consist of a meaningful opportunity for the plaintiff to tell his side of the story." Discovery is needed in the present case to determine whether the April 9, 2015, meeting afforded plaintiff Yelland a meaningful opportunity to tell his side of the story, especially since he alleges that he was only apprised of two out of the seven charges against him.

As such, plaintiff's pre-deprivation due process claim regarding his suspension without pay shall **PROCEED** as against Mahon, Elia and Antonetti in their individual capacities.

Since AHSD is a municipal agency, the standards annunciated in *Monell* apply to it. *See* Malles v. Lehigh County, 639 F.Supp.2d 566 (E.D.Pa. 2009).

Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality can be held liable under §1983 only if the plaintiff shows that the violation of his federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government. A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Moreover, a municipality such as AHSD is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See* Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa.

19

2014).("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." (citation omitted). The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. "Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted).

At this stage, plaintiff's complaint, while sparse, sufficiently states a municipal liability claim against AHSD under *Monell* with respect to his 14th Amendment pre-deprivation due process claim in Count I. (Doc. 1 at ¶'s 119-121). *See* Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d 516, 524 (M.D.Pa. 2013). Plaintiff must allege that AHSD unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violation of his constitutional rights. Mann v. Palmerton Area School Dist., 33 F.Supp.3d at 540. Further, plaintiff must show that the alleged unlawful conduct of the three individual defendants regarding his suspension and termination constitutes a policy made by "decisionmaker[s] possess[ing] final authority to establish municipal policy" who "issue[] an official proclamation, policy, or edict." Beck v. City of

20

Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Plaintiff can also show a custom by "evidence of knowledge and acquiescence." Id. If plaintiff establishes a custom, he must also "demonstrate that, through its deliberate conduct, [AHSD] was the 'moving force' behind [his alleged due process violation]." Bd. of County Comm'rs of Bryan County v. Bryan, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Thus, defendants' motion to dismiss plaintiff's pre-deprivation due process claim raised in Count I of his complaint is **DENIED** since plaintiff, at this stage of the litigation, states a cognizable claim under Fed.R.Civ.P. 12(b)(6) against the three individual defendants and AHSD.

### D. Post-Deprivation Due Process Claim, Count II

In Count II of his complaint, plaintiff alleges that his post-termination due process rights were violated when the defendants refused to arbitrate his wrongful termination claim as required by the CBA. Plaintiff states that he is entitled to arbitrate the defendants' decision to terminate him and that he elected to arbitrate his termination in May of 2015 under the CBA. However, he contends that the defendants have refused to arbitrate up to the present time. Specifically, plaintiff alleges that "defendants refused to provide [him] with the wrongful discharge arbitration to which he is undeniably entitled under the CBA and applicable law." (Doc. 14 at 10). He states that "defendants' refusal to arbitrate continues to this very day—even though the [PLRB] ordered defendants to participate in arbitration as recently as last

21

summer." (Id.).

No doubt that on September 25, 2015, the Union filed a charge with the PLRB against AHSD claiming that the district violated the PERA by refusing to arbitrate plaintiff's grievance alleging that the District terminated him without just cause.[4] (*See* Doc. 1-1). On August 25, 2016, the PLRB hearing examiner found that AHSD committed unfair practices in violation of the PERA and ordered the District to "[i]mmediately submit to the Union in writing an offer to arbitrate the Yelland Grievance." (Id. at 12). Plaintiff states that despite this order, defendants still refuse to arbitrate.

Defendants concede that plaintiff began to avail himself of his administrative remedies under the CBA by seeking arbitration but point out that they objected to arbitration claiming that plaintiff waived his right to arbitrate based on timeliness. However, AHSD's objection did not prevail and the District was ordered to participate in arbitration by the PLRB about five months ago. Subsequently, AHSD appealed the PLRB's decision and its appeal is presently pending. (Doc. 16 at 2 n. 2). Thus, defendants contend that plaintiff's post-termination due process claim is not yet ripe since AHSD's appealed the decision of the PLRB hearing examiner and no decision regarding its appeal has been rendered. The State has thus not yet finally

---

[4]As the court noted in Singleton v. Pitts. Bd. Of Educ., 2013 WL 3305486, *11 n. 11 (W.D.Pa. July 1, 2013), "[b]ecause the School District is a Pennsylvania public school district, the CBA is governed by the Public Employees Relations Act, 43 P.S. §1101.101 et seq."

decided if AHSD must arbitrate plaintiff's wrongful termination grievance. Defendants state that arbitration may still be available to plaintiff and that their appeal of the PLRB decision is currently pending at the State level. As such, defendants contend that post-termination process is still available to plaintiff in the State and it has not yet been foreclosed.

There is no question that plaintiff as a public school teacher is entitled to a reasonably prompt, post-deprivation hearing before a neutral tribunal. Loudermill, 470 U.S. at 547. As this court stated in Moffitt, 160 F.Supp.3d at 793, *Loudermill* requires "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." (quoting Morton, 822 F.2d at 367). "Generally, due process does not require an impartial decisionmaker at the pretermination hearing provided the state affords 'a neutral tribunal at the post-termination stage.'" Heneghan v. Northhampton Comm. College, 493 Fed.Appx. 257, 259-60 (3d Cir. 2012)(citation omitted).

A state provides constitutionally adequate procedural due process when it provides reasonable post-deprivation remedies. DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995), overruled on other grounds sub nom, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). In Zinermon v. Burch, 494 U.S. 113, 125-26 (1990), the Supreme Court stated:

> a §1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is*

> relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* (citations omitted). The constitutional violation actionable under §1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

"When adequate post-deprivation procedures exist, a plaintiff must avail him or herself of those procedures to properly state a procedural due process claim." Kairo-Scibek, 880 F. Supp. 2d at 561. The adequacy of a post-deprivation hearing frequently depends on whether it is provided in a timely manner. *See* Cleveland Board of Education v. Loudermill, 470 U.S. at 547 ("At some point, a delay in the post-termination hearing would become a constitutional violation."). However, in Loudermill, 470 U.S. at 547, the court held that a nine month post-deprivation hearing delay "is not, of course, unconstitutionally lengthy per se." As stated, plaintiff availed himself of the post-deprivation procedures available under the CBA by seeking arbitration of his wrongful termination claim against the District as opposed to a hearing before the board of school directors. The District objected to arbitration based on timeliness but was ordered to arbitrate by the PLRB. The District then

24

appealed this decision and its appeal is pending.

The court recognizes that exhaustion of administrative remedies for a due process claim under §1983 is not required. *See* Mariano, 40 F. Supp. 3d at 419. Nonetheless, "a cause of action for a due process violation does not accrue at Plaintiff's suspension or termination, rather it accrues when Plaintiff seeks to grieve [his] deprivation and is denied that opportunity." Damiano, 135 F.Supp.3d at 274 (quoting [Belas v. Juniata County School Dist., 2005 WL 2100666, \*8 (M.D.Pa. Aug. 26, 2005)](#)). It is not yet certain if plaintiff has been denied his opportunity to challenge his termination at the State level despite the delay in arbitration.

> As the court stated in Singleton, 2013 WL 3305486, \*11:
>
> this [federal] Court does not have jurisdiction over appeals from school board decisions to terminate public employees for cause. [Plaintiff's] only recourse, as a public school employee, was to pursue the grievance procedure provided for under the CBA. [Plaintiff] invoked the CBA, filed a grievance, and elected to proceed to arbitration, where the Arbitrator upheld the School District's decision to terminate him for cause. "[I]n local public employment disputes, the courts of common pleas have exclusive jurisdiction to review an arbitrator's award." Scranton Sch. Dist. v. Scranton Federation of Teachers, Local 1147, AFT, 43 Pa.Cmwlth. 102, 402 A.2d 1091, 1093 (Pa.Commw.Ct. 1979) [citation omitted].

(Footnote omitted).

Plaintiff Yelland has not yet been denied the opportunity to challenge his termination notwithstanding the delay in his request for arbitration since a final decision from the State has not been made regarding the District's recent

25

appeal of the PLRB's August 25, 2016 decision directing it to arbitrate. Plaintiff's claim in Count II is premature at this point since there is still the possibility that the District will be ordered to arbitrate his wrongful termination claim at the State level and that this will constitute an adequate post-deprivation procedure. Simply put, plaintiff may still be able to utilize the CBA's grievance and arbitration procedures regarding his termination and his post-deprivation process available in the State has not yet been foreclosed. If an arbitration is held, either party can appeal the arbitrator's decision to the Lackawanna County Court of Common Pleas. Id. Then "[a]ny appeal from [an order of the county court] should [be] taken to the Pennsylvania appellate courts, not brought in federal court." Id.

The Union's grievance that AHSD did not have just cause to terminate plaintiff's employment has not yet been to arbitration. Nor has it been finally determined by the State that the District must participate in arbitration. It cannot be said that the post-deprivation procedures available to plaintiff in the State failed to provide him with due process of law, a required showing for a 14th Amendment procedural due process claim. Biliski, 574 F.3d at 219. As such, plaintiff does not have a cognizable post-deprivation due process claim. *See* Hennehan, 493 Fed.appx. at 260-61 (Third Circuit held that since the arbitration procedure in the CBA was available to plaintiff and plaintiff had a pending state court action under the PERA seeking to compel arbitration of his employment grievance, district court properly granted defendant college

summary judgment on plaintiff's post-termination due process claim).

Thus, plaintiff's post-deprivation procedural due process claim contained in Count II of his complaint does not state a plausible claim against the individual defendants and is **DISMISSED**.

Since the court finds that plaintiff has failed to state a cognizable post-deprivation due process claim against the individual defendants, plaintiff's due process claim in Count II based on municipal liability against AHSD, under *Monell,* fails as a matter of law. *See* Deninno v. Municipality of Penn Hills, 269 Fed.Appx. 153, 158 (3d Cir. 2008) ("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual Defendants violated the Constitution.").

Therefore, plaintiff's post-deprivation due process claim against AHSD in Count II is also **DISMISSED**. *See* Hertzler v. West Shore School Dist., 2013 WL 53982, \*4-\*5 (M.D.Pa. Jan. 03, 2013).

### *E. State Law Malicious Prosecution Claim, Count III*

Plaintiff alleges that after he was suspended indefinitely without pay by the defendants, Mahon, Elia and Antonetti proceeded to conduct a sham investigation into the allegations against him and, they purposefully manufactured inculpatory evidence and purposefully ignored exculpatory evidence. (Doc. 1 at ¶75). Plaintiff then alleges that the sham investigation led to a knowingly false report which defendants shared with the police and DA's office to try and convince them to file "a bogus criminal prosecution" against

him. (Id. at ¶77). The DA's office then filed criminal charges against plaintiff on May 7, 2015, namely, misdemeanor offenses of simple assault and child endangerment, regarding only the April 8, 2015 incident with Student A. Plaintiff was found not guilty of both charges by a jury in November 2015.

To state a claim for malicious prosecution under Pennsylvania law, a plaintiff must allege that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. Zlomsowitch v. E. Penn Twp., 2012 WL 1569633 (M.D. Pa. May 3, 2012) (citing Kelley v. Gen'l Teamsters, Local Union 249, 518 Pa. 517, 544 A.2d 940, 941 (Pa. 1988)). "[M]alice may be inferred from a lack of probable cause." Logan v. Salem Baptist Church of Jenkintown, 2010 WL 3364203, *2 (E.D.Pa. Aug. 7, 2010) (citing Kelley, 544 A.2d at 941).

A private citizen can be held liable for a malicious prosecution claim under Pennsylvania law if he "knowingly provides false information to law enforcement" "because such an action 'prevent[s] the police officer from adequately exercising independent judgment as to whether criminal charges should be instituted.'" Reiber v. Fillipone, 2016 WL 7034704, *2 (E.D.Pa. Dec. 2, 2016) (quoting Hess v. County of Lancaster, 514 A.2d 681, 683 (Pa.Commw.Ct. 1986)); *see also* Logan, 2010 WL 3364203, *2. "In order to hold a private person responsible for the initiation of proceedings by a public

official, *Hess* stated it must 'appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.'" Id. (quoting Hess, 514 A.2d at 683). The Reiber Court, 2016 WL 7034704, *3,  indicated that the concern in *Hess* "was that giving police false information would prevent them from adequately exercising independent judgment as to whether charges should be instituted."

Plaintiff in the instant action alleges that his criminal prosecution was initiated by fraud by defendants Mahon, Elia and Antonetti since they knowingly provided criminal authorities with incomplete and/or biased information and then pressured authorities to initiate criminal charges against him for an improper purpose.

The court finds, at this stage of the litigation, that plaintiff has stated a cognizable malicious prosecution claim under Pennsylvania law against defendants Mahon, Elia and Antonetti. Plaintiff alleges that he was charged due to the knowingly false and misleading information defendants provided to the criminal authorities and that they pressured authorities to charge him. After discovery, defendants can file a summary judgment motion if they choose when the facts are in the record as to the information that they possessed following their investigation, the completeness of the information they provided to criminal authorities and, the existence of probable cause if

they were completely forthright with the authorities. *See* Reiber, 2016 WL 7034704, *4 ("Discovery will likely reveal the extent, if any, to which the information provided to the police by the [defendant's employees] was the determining factor in the subsequent decision to criminally charge the Plaintiffs."). The *Reiber* Court concluded that "at the motion to dismiss stage, taking all the allegations in the complaint as true and drawing all inferences in Plaintiffs' favor, the Court is unable to conclude as a matter of law that the Plaintiffs' arrests for harassment and disorderly conduct did not result from the alleged false accusations made by [defendant's] employees." Id.

Moreover, even though the Magisterial District Judge bound over both charges against plaintiff for trial on June 10, 2015, this does not establish as a matter of law that probable cause existed precluding plaintiff's claim for malicious prosecution under Pennsylvania law. *See* Logan, 2010 WL 3364203, *3 (court found that complaint alleged defendants made knowingly false statements to procure plaintiff's prosecution, "and if the accusations were known to be false, then defendants simply cannot be described as acting with probable cause.").

Finally, there is no dispute that the criminal proceedings terminated in plaintiff's favor. As such, the motion to dismiss Count III of the plaintiff's complaint filed on behalf of defendants Mahon, Elia and Antonetti is **DENIED**.

## F.   QUALIFIED IMMUNITY

As their final argument, the defendants assert that, even if the court

rejects their arguments that plaintiff's due process claims fail, his claims against Mahon, Elia and Antonetti must be dismissed because they are immune from suit under the doctrine of qualified immunity. As discussed, the court has found that the pre-termination due process claim in Count I against these defendants as well as the state law malicious prosecution claim against them in Count III shall proceed and discovery will be conducted.

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Reichle v. Howards, ⸺ U.S. ⸺, 132 S.Ct. 2088, 2093 (2012)("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

To determine whether defendants Mahon, Elia and Antonetti are entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 232 (2009); *see also* Perez v.

31

Borough of Berwick, 507 Fed.Appx. 186, 192 (3d Cir. 2012) ("To determine whether the individual officers are entitled to qualified immunity, the District Court [is] required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights.").

At the present stage of this case, and based on the above discussion, it is premature to determine whether defendants Mahon, Elia and Antonetti are entitled to qualified immunity. *See* Williams v. Papi, 30 F.Supp.3d 306, 314 (M.D. Pa. 2014) ("[T]he Third Circuit has cautioned that 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases'") (quoting Newland v. Reehorst, 328 F.App'x. 788, 791 n. 3 (3d Cir. 2009)). As in the *Williams* case, the court finds that "a determination of qualified immunity is inappropriate at the pleading stage" in the present case. Id.*;* Donovan, 2015 WL 3771420, at *10.

The court has found that plaintiff stated a cognizable constitutional claim under the 14ᵗʰ Amendment against defendants Mahon, Elia and Antonetti in Count I. As such, the court does not find at this stage of the case that qualified immunity exists as a matter of law. After discovery is conducted by the parties and the factual record is fully developed, defendants Mahon, Elia and Antonetti can re-assert the qualified immunity defense in a summary judgment motion if appropriate. *See* Kopec v. Tate, 361 F.3d 772, 777 (3d Cir.

2004) ("defendant[] can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.") (citations omitted).

## V.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss, (Doc. 6), plaintiff's complaint, (Doc. 1), is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion to dismiss is **GRANTED** with respect to defendant AHSD Board of Directors who are **DISMISSED WITH PREJUDICE**. Defendants' motion to dismiss all of plaintiff's claims against Mahon, Elia and Antonetti, including his claim for punitive damages, in their official capacities is **GRANTED** and all of these claims are **DISMISSED WITH PREJUDICE**. Defendants' motion to dismiss is **GRANTED** with respect to plaintiff's 14th Amendment post-deprivation procedural due process claim contained in Count II of his complaint and this claim is **DISMISSED**. Defendants' motion to dismiss plaintiff's 14th Amendment pre-deprivation procedural due process claim contained in Count I of his complaint is **DENIED** and this claim is **PERMITTED TO PROCEED** against AHSD and, against Mahon, Elia and Antonetti in their individual capacities. Plaintiff's claim for punitive damages regarding Count I against Mahon, Elia and Antonetti in their individual capacities is **PERMITTED TO PROCEED**. Defendants' motion to dismiss

33

plaintiff's state law malicious prosecution claim contained in Count III of his complaint is **DENIED** and, this claim against Mahon, Elia and Antonetti is **PERMITTED TO PROCEED**.

Finally, defendants AHSD, Mahon, Elia and Antonetti will be directed to file their answer(s) to the remaining claims of plaintiff's complaint within **fourteen (14) days** of the date of the court's order. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 9, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2080-01.wpd

34