**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM H. YELLAND,** | : |
| | : |
| **Plaintiff** | :    **CIVIL ACTION NO. 3:16-2080** |
| | : |
| **v.** | :    **(JUDGE MANNION)** |
| | : |
| **ABINGTON HEIGHTS SCHOOL** | |
| **DISTRICT***, et al.,* | : |
| | : |
| **Defendants** | : |

**M E M O R A N D U M**

## I.    BACKGROUND[1]

On October 27, 2017, plaintiff William H. Yelland filed a motion for leave of court to amend his complaint, (Doc. 64), with respect to his 14th Amendment post-termination due process claim, under 42 U.S.C. §1983, which was contained in Count II of his original complaint, (Doc. 1). This claim was previously dismissed by the court in its February 9, 2017 Memorandum and Order. (Doc. 18, Doc. 19). Plaintiff submitted his proposed amended complaint as an exhibit. (Doc. 63-56). Plaintiff simultaneously filed a motion for partial summary judgment, (Doc. 65), pursuant to Fed. R. Civ. Pro. 56. Plaintiff seeks summary judgment on his post-termination due process claim as contained in his proposed amended complaint. (Doc. 65-1). Plaintiff also

---

[1]Since the complete background of this case was detailed by the court in its February 9, 2017 Memorandum, (Doc. 18), it will not be fully repeated herein. *See also* 2017 WL 529837.

contends that even if the court denies his motion to amend his complaint to add his proposed 14th Amendment post-deprivation due process claim, he should be found to be excused from pursuing any further remedies provided by the State, including the recently scheduled school board hearing. Both of plaintiff's motions have been briefed by the parties, a statement of material facts and response have been filed, and exhibits have been submitted. On November 28, 2017, plaintiff's reply brief regarding both of his pending motions was filed with an attached exhibit. (Doc. 73).

Based on the foregoing, the court will **DENY** plaintiff's motion for leave to amend his complaint regarding his 14th Amendment post deprivation procedural due process claim because he still has available remedies through the State to challenge the recommendation for his dismissal through the school board hearing and appellate avenues, despite the delay.

The court will also **DENY IN ITS ENTIRETY** plaintiff's motion for partial summary judgment since it finds that plaintiff must proceed with the school board hearing and then pursue his appellate remedies provided by the State. Further, the court will not excuse plaintiff from participating in the school board hearing and from pursuing his State appellate remedies.

## II.   STANDARDS OF REVIEW[2]

### A.   *Motion to Amend Complaint*

The plaintiff's moves for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), since the time for amending the complaint as of right has expired. *See* Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2) states: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Third Circuit has adopted a liberal approach to the amendment of pleadings in order to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486–87 (3d Cir. 1990). Amendment, however, is not automatic. *See* Dover Steel Co., Inc. v. Hartford Accident and Indent., 151 F.R.D. 570, 574 (E.D. Pa.1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); *see also* Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Futility of amendment occurs when the complaint, as amended, does

_____

[2]Based on its discussion herein, the court sees no need to include the standard for a summary judgment motion. The applicable standard is also set forth in the briefs of the parties.

not state a claim upon which relief can be granted. *See* In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990).

### B. Section 1983

The school district, the school board and the school officials are state actors for purpose of §1983. *See* Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d 258, 262 (E.D.Pa. 2006).

To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing

*Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. *Accord* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

## III.    DISCUSSION

In his proposed amended Count II, plaintiff alleges that all defendants denied him post-termination process by refusing to participate in arbitration after his April 23, 2015 and May 14, 2015 requests to refer the recommendation to dismiss him from his teaching position to an arbitrator, which he made pursuant to the Abington Heights Education Association's Collective Bargaining Agreement ("CBA"). He alleges that AHSD "arbitrarily decided" that he waived his right to arbitrate. He also alleges that AHSD then refused to submit the issue of arbitrability to an arbitrator. On December 20, 2016, the Pennsylvania Labor Relation Board ("PLRB") issued a Final Order adopting the Hearing Examiner's ("HE") August 25, 2016 Proposed Decision and Order recommending that AHSD must arbitrate the question of arbitrability and dismissing AHSD's exceptions to the HE's proposed decision.

Plaintiff then alleges that AHSD did not pursue a further appeal of the PLRB decision. He avers that "[a]fter the School District delayed for nearly two years [from his initial request for arbitration], the parties finally submitted the question of arbitrability to the appointed arbitrator." Plaintiff alleges that

5

this delay is "incontrovertibly attributable to the School District." Further, plaintiff alleges that the delay "was substantially in excess of the time frame set forth in Pennsylvania's School Code [24 P.S. §11-1127], which requires that a hearing take place not 'sooner than ten (10) days nor later than fifteen (15) days after . . . [detailed] written notice [of the charges is provided].'" Plaintiff avers that "[t]he delay itself constitutes a post-deprivation due process violation" and, that this delay caused him to suffer harm entitling him to monetary damages as well as injunctive relief. (Doc. 63-56 at 28-29).

As a backdrop, plaintiff explains, (Doc. 61 at 9), that he requested, through the union lawyer, a grievance arbitration to dispute his suspension and the recommendation that he be dismissed. However, he states that after he was arrested on the criminal charges, his defense counsel, on May 19, 2015, waived the grievance arbitration the union lawyer requested and instead requested a hearing before the school board. He states that since his defense counsel was not authorized to make the request, a legitimate dispute arose as to whether he was entitled to arbitration or a school board hearing. He states that even though there was a valid disagreement between the parties as to the remedy, "there was no reasonable dispute that an arbitrator, in the first instance, was obliged to determine the question of arbitrability."

Additionally, plaintiff states, (Doc. 61 at 9-10), that based on the PLRB's final decision dated December 20, 2016, the question of arbitrability was finally submitted to an arbitrator. On August 4, 2017, the arbitrator determined

6

that the request by his criminal lawyer for a school board hearing regarding his termination superseded the initial request by the union lawyer for a grievance arbitration. Thus, AHSD scheduled a school board hearing which was to begin on October 30, 2017.

Plaintiff now contends that it is AHSD's refusal to submit the initial question of arbitrability to arbitration, and the ensuing 20-month delay until the refusal was found by the PLRB to be an unfair labor practice, which gives rise to his proposed amended post-deprivation due process claim. As such, plaintiff asserts that the 20-month delay caused by AHSD constitutes a denial of due process, and that he should be excused from participating in the school board hearing that has been scheduled based on Alvin v. Suzuki, 227 F.3d 107 (3d Cir. 2000).

It is defendants' position that plaintiff's request to amend his complaint should be denied since he cannot pursue a claim for post-deprivation due process until he avails himself of the school board hearing and the appeal remedies provided by the State. Thus, defendants argue that plaintiff's proposed amended claim fails because he undisputedly has not yet availed himself of, and completed, the school board process.

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so,

(2) does the available process comport with all constitutional requirements."
[Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006)](#) *aff'd*, [248 F.App'x 302 (3d Cir. 2007)](#); *see also* [Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)](#).

In [Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)](#), the Third Circuit discussed a post-deprivation due process claim and stated, "the due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.' If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." (internal citation omitted). The Third Circuit then stated that "[w]e do not hold that a party need wait forever before suing, but only that, if the process is moving forward, and the avenues of internal appeal have not been triggered, then a suit claiming inadequacy of procedural protection is premature." Id. Thus, a plaintiff bringing a claim post-deprivation due process claim "must have taken advantage of the processes that were available, unless those processes were patently inadequate." Id.

A state provides constitutionally adequate procedural due process when it provides reasonable post-deprivation remedies. [DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995)](#), *overruled on other grounds sub nom*, [United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003)](#). In [Zinermon v. Burch, 494 U.S. 113, 125-26 (1990)](#), the

Supreme Court stated:

> a §1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* (citations omitted). The constitutional violation actionable under §1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

"When adequate post-deprivation procedures exist, a plaintiff must avail him or herself of those procedures to properly state a procedural due process claim." Kairo-Scibek, 880 F.Supp. 2d at 561. The adequacy of a post-deprivation hearing frequently depends on whether it is provided in a timely manner. *See* Cleveland Board of Education v. Loudermill, 470 U.S. at 547. No doubt that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." Id. Further, "[w]here a particular process is inadequate, effectively blocked, or a sham, that process also would not provide the due process required by law." Michael v. Quaker Valley School District, 2017 WL 639374, *15 (W.D.Pa. Feb. 16, 2017) (citing Alvin,

227 F.3d at 116, 118); *see also* Mariano v. Borough of Dickson City, 40 F.Supp.3d 411 (M.D.Pa. 2014) ("Where there is an available grievance process, a plaintiff alleging a procedural due process violation must pursue that process before seeking redress in the courts, unless the grievance process is blocked or there is evidence that it is a sham.") (citing Garzella v. Borough of Dunmore, 280 Fed. Appx. 169, 173 (3d Cir. 2008)).

The court now examines the grievance process available in Pennsylvania for a teacher to challenge his/her dismissal.

In Damiano v. Scranton Sch. Dist., 135 F. Supp. 3d 255, 273-74 (M.D. Pa. 2015), this court stated:

> The Pennsylvania Public School Code of 1949, 24 P.S. §§11–1127, *et seq*., sets forth a statutory remedy and mandates an administrative process for challenging demotions and dismissals [of professional employees of school districts] that ends by an appeal to the Pennsylvania Secretary of the Department of Education. *See* Merritt v. W. Mifflin Area Sch. Dist., 56 Pa.Cmwlth. 126, 424 A.2d 572 (Pa.Cmwlth. 1981). District Defendants followed the statutorily mandated process for dismissal of professional employees by providing plaintiff with a hearing before the board of school directors. The procedure for dismissal of a professional employee is set forth in 24 P.S. §§11–1127 through 11–1131, and provides for notice and hearing before the board of school directors and a detailed statement of the charges against the employee, for a 2/3 vote by school board members to effectuate dismissal.

If the school board votes to terminate the professional employee, he/she can appeal the decision to the Secretary of the Department of Education, pursuant to 24 P.S. §11–1132. The decision of the Secretary of the

Department of Education can then be appealed to the Pennsylvania Commonwealth Court. Id. at 274.

Here, plaintiff has not yet been terminated and despite the delay in scheduling the school board hearing, the avenue for plaintiff to challenge the recommendation for his dismissal has not been foreclosed and, he still has the opportunity to be fully heard by the school board and to present all of his evidence, including the student witnesses, before a final decision by the board is made. Plaintiff's appellate remedies after the school board renders a decision also remain.

Additionally, as the court in Michael, 2017 WL 639374, *14, explained the Pennsylvania School Code, 24 P.S. §5-514, provides that a school board has the right to remove an employee "for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct", but only after "due notice, giving the reasons therefor, and after hearing if demanded." Under Local Agency Law, 2 Pa.C.S.A. §553, "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Following a hearing and decision by a local agency, such as the school board, Local Agency Law provides for an appeal process regarding the decision "to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa.C.S.A. §752, §754. Thus, "[u]nder both the School Code

and Local Agency Law, [plaintiff] was entitled to 'due' and 'reasonable' notice, and the right to request a hearing before the [School] Board." Michael, 2017 WL 639374, *14.

In its February 9, 2017 Memorandum, the court found that plaintiff was a professional educator employed by AHSD under the Pennsylvania School Code, and that he had a protected property interest in his employment with AHSD. Indeed, defendants do not dispute this. The court then stated:

> Defendants concede that plaintiff began to avail himself of his administrative remedies under the CBA by seeking arbitration but point out that they objected to arbitration claiming that plaintiff waived his right to arbitrate based on timeliness. However, AHSD's objection did not prevail and the District was ordered to participate in arbitration by the PLRB about five months ago. Subsequently, AHSD appealed the PLRB's decision and its appeal is presently pending. (Doc. 16 at 2 n. 2). Thus, defendants contend that plaintiff's post-termination due process claim is not yet ripe since AHSD's appealed the decision of the PLRB hearing examiner and no decision regarding its appeal has been rendered. The State has thus not yet finally decided if AHSD must arbitrate plaintiff's wrongful termination grievance. Defendants state that arbitration may still be available to plaintiff and that their appeal of the PLRB decision is currently pending at the State level. As such, defendants contend that post-termination process is still available to plaintiff in the State and it has not yet been foreclosed.

(Doc. 18 at 22-23).

Thus, the court dismissed plaintiff's post-deprivation due process claim as premature since AHSD's exceptions were pending to the HE's finding that AHSD's refusal to submit the question of arbitrability to arbitration was an unfair labor practice.

12

After the court's prior decision, the PLRB dismissed AHSD's exceptions and entered a Final Order on December 20, 2016 directing AHSD to submit the question of arbitrability to arbitration. AHSD submitted to arbitration in January 2017. The arbitrator then found that plaintiff's request for a school board hearing superseded his request for arbitration.

Plaintiff states that based on the PLRB's final decision, "[AHSD] now proposes to hold a school board hearing on non-consecutive evenings starting October 30, 2017, to determine whether the Superintendent's termination recommendation should be adopted." He states that "[he] seeks leave to amend his Complaint to reinstate a now-ripe claim for post-deprivation due process and for partial summary judgment on the question of whether he needs to participate in the hearing." Plaintiff contends that AHSD's initial refusal to arbitrate his grievance "itself constitutes a denial of due process." Plaintiff states that after this court dismissed his post-deprivation due process claim from his original complaint, the PLRB dismissed AHSD's exceptions to the HE's proposed decision and issued its final order directing that AHSD must submit the question of arbitrability to an arbitrator. (Doc. 61 at 4-5). Plaintiff then essentially argues that since the HE found that AHSD's refusal to submit the question of arbitrability to an arbitrator was "an unfair labor practice," AHSD's delay of about one year and eight months "gives rise to a ripe post-deprivation claim" entitling him to amend his complaint to re-assert his proposed Count II. Specifically, he states

13

that the delay from the dates he requested arbitration in April and May 2015 to the date that AHSD finally submitted to arbitration in January 2017 "was unlawfully caused by the District." (Id. at 12).

The court finds that neither party is without fault for the delay, and that all of the delay was not caused by AHSD. Some the delay was caused when plaintiff's criminal defense counsel requested a school board hearing after the initial request by the union lawyer for grievance arbitration was made on plaintiff's behalf under the CBA. It is of no moment that plaintiff now claims that he did not authorize his criminal defense counsel to request the school board hearing, since the request on his behalf was in fact made. When the union lawyer initially advised the board that plaintiff did not want a hearing, the board did not schedule one and a motion to dismiss plaintiff from his teaching position was put on the board's agenda. Further, after plaintiff's criminal defense counsel requested a school board hearing, a hearing was scheduled for June 3, 2015. However, as plaintiff's criminal defense counsel indicated in an email on that date, all of the parties agreed to stay plaintiff's hearing before the school board until the complete resolution of the criminal charges that were pending against him. Plaintiff's defense counsel also specifically stated that the parties waived any due process claim regarding the fact that the hearing was not occurring within the requisite time frame under the School Code and Local Agency Law. Counsel for AHSD agreed with the content of the email sent by plaintiff's criminal defense counsel.

Subsequently, on July 9, 2015, plaintiff's union lawyer wrote to AHSD again stating that plaintiff wanted to challenge the recommendation of dismissal through arbitration. Plaintiff then would not participate in the school board hearing, and maintained that he had requested an arbitration. AHSD objected to arbitration claiming that plaintiff had waived his right to request arbitration. On September 25, 2015, the union filed a charge with the PLRB against AHSD claiming that the district violated the PERA by refusing to arbitrate plaintiff's grievance. (*See* Doc. 1-1). The matter then went to the PLRB which eventually found on December 20, 2016 that AHSD's refusal to submit the question of arbitrability to arbitration was an unfair labor practice. However, the HE also found that the parties had a legitimate disagreement as to whether plaintiff had elected to proceed by arbitration. AHSD then submitted to arbitration in January 2017. The arbitrator later found that plaintiff's request for a school board hearing superseded his request for arbitration. AHSD then scheduled a school board hearing to commence on October 30, 2017. (*See* Doc. 68-1, Doc. 68-2).[3]

Subsequently, the arbitrator concurred with AHSD's position and found

---

[3]The court notes that to the extent that plaintiff seeks the court not to consider the exhibits attached to defendants' brief, (Doc. 68-1, Doc. 68-2), based on the doctrine of collateral estoppel with respect to the factual findings of the PLRB, his request is denied and the court will consider the exhibits. The exhibits are relevant and material to plaintiff's instant motion to amend his complaint to add his post-deprivation due process claim based on delay itself. As such, the court finds that the issues with respect to plaintiff's instant motion in this case are different from the issues in the PLRB's decision.

that the grievance arbitration option was waived by plaintiff, and that the grievance filed by the union on plaintiff's behalf was not arbitrable since he later requested a school board hearing. As defendant point out, (Doc. 69 at 11), "Plaintiff elected not to appeal the arbitrator's conclusion that Plaintiff's request to proceed before a Board hearing superseded the Union's request to arbitrate." Further, since no hearing was yet conducted by the school board, there has been no final decision made by the board to date regarding plaintiff's termination. Rather, defendant Mahon's recommendation that plaintiff be dismissed from his AHSD teaching position is presently pending. The school board cannot make a decision as to whether plaintiff will be terminated until the hearing is completed. (Doc. 68-2, at 2-3). Indeed, plaintiff will be able to present all of the testimonies of the student witnesses who were deposed in this case, at the school board hearing to support his position that he should not be dismissed.[4] The school board has scheduled the

---

[4]Plaintiff's statement of facts, (Doc. 62), contains several paragraphs detailing the student testimonies indicating, in part, that plaintiff was only engaging in horseplay with the students. Thus, they shall not be repeated herein. The court also notes that defendants' indicate "there is eye witness testimony and evidence from the Victims (referred to as Students A, B, and C) that contradicts [plaintiff's contention that the alleged assaults on the student "never happened"]. (Doc. 69 at 13, Doc. 70-1, Doc. 70-4, Doc. 70-6).

The court also finds that several of plaintiff's statement of facts detailing the testimonies of the students and challenging the Grounds for his Dismissal are not relevant for purposes of his pending motions regarding his post-deprivation due process claim. The relevant paragraphs with respect to the instant motions are largely found in plaintiff's statement of facts at Doc. 62 at 55-61. The court has discussed these relevant facts herein.

hearing to proceed in a manner to allow plaintiff to present all of his evidence.[5] Nonetheless, plaintiff now requests this court to allow him to bypass the established Pennsylvania statutory procedure, including the school board hearing that has been scheduled and, instead to proceed directly with his proposed amended post-deprivation due process claim in this court. Based on all of the circumstances of this case, the court finds that there has not been undue delay regarding his post-deprivation due process rights. Nor does the court find that defendants were the sole cause for all of the delay. Moreover, the court finds that legitimate disputes existed between the parties that had to be resolved before the school board hearing could be scheduled.

Additionally, plaintiff is seeking to state a claim for post-deprivation due process based on delay alone. In FDIC v. Mallen, 486 U.S. 230, 242, 108 S.Ct. 1780, 1788 (1988), the Supreme Court stated:

> In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

Interestingly, the Third Circuit in Ritter v. Cohen, 797 F.2d 119, 123-24

---

[5]The court notes that the October 30, 2017 school board hearing was continued while plaintiff's two instant motions were pending pursuant to plaintiff's request.

(3d Cir. 1986), held that a 20-month delay between the alleged deprivation and the post-termination hearing did not violate plaintiff's due process rights. (citing Givens v. U.S. R.R. Bd., 720 F.2d 196, 201 (D.C.Cir. 1983) (nineteen-month delay to adjudicate an appeal of denial of railroad benefits does not violate due process, where plaintiff offers no evidence of intentional delay) *cert. denied*, 469 U.S. 870, 105 S.Ct. 219 (1984)). The delay in *Ritter* is the same period of delay that plaintiff Yelland is alleging in this case. Furthermore, as discussed, plaintiff fails to establish a delay attributable only to defendants and, he fails to establish that there was no justification for the delay. The court also finds no evidence that defendants intentionally or maliciously caused any delay in this case. *See* Fanti v. Weinstock, 2014 WL 5586348 (M.D.Pa. Nov. 3, 2014), *aff'd*, 629 Fed.Appx. 325 (3d Cir. 2015) (Court found that 17-month delay did not constitute a violation of due process, particularly where there was no evidence that it was done intentionally or maliciously by PennDOT.).

To summarize, after plaintiff elected, through his criminal defense counsel, a school board hearing under the School Code, AHSD scheduled a hearing before the board in June 2015. (Doc. 68-1). Plaintiff's defense counsel then requested a continuance of the hearing until plaintiff's criminal trial was concluded. After the criminal trial, the parties then disputed the appropriate venue to decide the recommendation for plaintiff's dismissal, i.e., arbitration or a school board hearing. An arbitrator eventually found that a

school board hearing was the proper venue. Thus, under such circumstances of this case, the 20-month delay fails to state a claim for deprivation of due process.

Further, the court finds that notwithstanding the delay, AHSD availed itself of the process made available by the State to challenge plaintiff's request for arbitration, and finally the proper venue has been determined for plaintiff to challenge the recommendation to dismiss him. In fact, on September 7, 2017, plaintiff's counsel indicated that plaintiff accepted the arbitrator's decision on arbitrability and, that he wished to proceed with a school board hearing if AHSD would not reconsider the dismissal recommendation. (Doc. 68-2 at 4). Thus, under the instant facts, the delay itself does not constitute a due process violation. "[A] cause of action for a due process violation does not accrue at Plaintiff's suspension or termination, rather it accrues when Plaintiff seeks to grieve [his] deprivation and is denied that opportunity." Damiano, 135 F.Supp.3d at 274 (quoting Belas v. Juniata County School Dist., 2005 WL 2100666, *8 (M.D.Pa. Aug. 26, 2005)). Specifically, plaintiff still has the opportunity to challenge the recommendation for his dismissal at the State level through the school board hearing despite the delay. As such, his post-deprivation due process claim has not accrued. The court finds that plaintiff must still pursue the hearing recently established by the school board. The above detailed post-deprivation process the State provides before the dismissal of professional employees by a school district

is both available to plaintiff and constitutionally adequate. Thus, plaintiff must avail himself of the State procedures still available to him before he can pursue his post-deprivation due process claim.

In light of its findings the court sees no need to address defendants' second argument that "this court lacks jurisdiction to enter an order excusing Plaintiff from pursuing his well-defined state law remedies." (Doc. 68 at 4).

Next, plaintiff argues that AHSD's act of blocking access to the process by refusing to arbitrate his wrongful termination claim as required by the CBA excuses him from any obligation to pursue process. The court finds that the alleged blocking of access by AHSD to arbitration does not relieve plaintiff from participating in the hearing scheduled by the school board. Rather, AHSD was following the process provided by the State by challenging plaintiff's request for arbitration and, then by filing objections to the HE's proposed decision. Also, as discussed, the court finds that all of the delay after Mahon's recommendation for plaintiff's dismissal was not only attributable to defendants.

Additionally, plaintiff contends that he should be excused from participating in the hearing since the process the school board has made available is futile. He states that "the proposed hearing is demonstrably futile because the process until now has been a sham", and that "the school board members, have evidently made up their minds already" based on the representation of AHSD's solicitor, who is not counsel of record in this case

for defendants, that "the District is willing to discuss a resolution of this lawsuit only if the resolution does not involve [plaintiff's] reinstatement." (Doc. 61 at 5-6, Doc. 62 at 61). Plaintiff states that "presumably" the solicitor got his instructions from the school board and, that this demonstrates "it is inconceivable" the school board will reinstate him to his teacher position at the conclusion of the hearing it has scheduled. The court finds no evidence showing that the school board has already determined plaintiff should be dismissed, especially since the hearing was continued at plaintiff's request and no evidence has even been presented to the board, including the testimonies of the student witnesses who were deposed in this case (whose testimonies are extensively detailed in plaintiff's statement of facts). The conclusions which plaintiff draws from the facts of this case will not suffice as evidence to show that a decision has already been made by the school board and that any hearing will be a sham.

Finally, plaintiff maintains that he should be excused from participating in the hearing since it will be patently inadequate based on the school board's conflict of interest. He states that "even if school board members have not made up their minds, the school board has an inescapable conflict of interest fundamentally non-neutral and otherwise incapable of reasonably and fairly adjudicating [his] termination." (Doc. 61 at 6). Plaintiff contends that during discovery, the student witnesses testified that the alleged assault incident which lead to his suspension was merely horseplay with student T.K. that

lasted a few seconds, and that these students told administrators this during AHSD's investigation conducted after his suspension. He then states that "the administrators intentionally omitted from their investigative report any information contrary to the termination decision they had already reached." (Id.). Plaintiff also states that if the school board decided to reinstate him after the hearing is completed, this would undermine defendants' case at the trial in the instant court action which shows the board's "irreconcilable conflict of interest" rendering the hearing "patently inadequate." (Id.).

Plaintiff's argument regarding the alleged conflict of interest by the school board is tenuous at best, in light of the court's above findings. In fact, if the court accepted plaintiff's contention, then in any case in which a school board was conducting a hearing to decide if a teacher should be terminated and the teacher had a parallel civil rights action pending under §1983 raising a due process challenge to his dismissal, the teacher would always be excused from participating in the hearing based on the school board's so-called conflict of interest.

Moreover, with respect to all of plaintiff's claims as to why he should be excused from participating in the school board hearing, the court emphasizes that plaintiff will be able to appeal any unfavorable decision by the school board to the Secretary of the Pennsylvania Department of Education, and then he can appeal the Secretary's decision to the Pennsylvania Commonwealth Court. Significantly, plaintiff does not claim that these

appellate remedies provided by the State are in any way inadequate.

Futility is one of the grounds that can serve as the basis for denying leave to amend a complaint as well as prejudice. *See* Shane v. Fauver, 213 F.3d 113,115 (3d Cir. 2000). Based on the above discussion, the court finds futility in allowing plaintiff to amend his post-deprivation due process claim. It would also be prejudicial to defendants not to allow them to conduct a full evidentiary hearing and rule on Mahon's recommendation for plaintiff's dismissal as it is the process well-established by the State.

As such, the court will deny plaintiff's motion to amend his complaint to re-assert his post-deprivation due process claim. The court will also deny plaintiff's partial motion for summary judgment regarding his proposed amended post-deprivation due process claim and any relief sought therein. Further, the court will deny plaintiff's partial motion for summary judgment insofar as plaintiff states in his reply brief, (Doc. 73 at 6), that he is seeking partial summary judgment with respect to his request for back pay as well as lost future earnings based on his allegations "that his termination, denial of pre-deprivation due process, the sham investigation, and the malicious prosecution have generally (and wrongfully) rendered him unemployable in his chosen field", since it is not yet clear what his alleged damages will be after the school board hearing. As discussed, plaintiff has not yet been terminated and, he still has available and adequate remedies provided by the State to seek reinstatement to his teaching job. Also, plaintiff can seek summary

judgment separately as to his other remaining claims in this case, including his pre-deprivation due process claim and his malicious prosecution claim. Finally, the court will deny plaintiff's request with respect to his partial motion for summary judgment seeking the court to excuse him from participating in the school board hearing.

## IV.  CONCLUSION

For the foregoing reasons, plaintiff Yelland's motion for leave to amend his complaint, (Doc. 64), regarding his 14th Amendment post-deprivation procedural due process claim is **DENIED**. Plaintiff Yelland's motion for partial summary judgment, (Doc. 65), is **DENIED IN ITS ENTIRETY**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 8, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2080-03.wpd

24